UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TODD M. PAPOI

                      Plaintiff,          06-CV-445

           v.                       **DECISION**
                                         **and ORDER**
MICHAEL J. ASTRUE[1], Commissioner
of Social Security

                      Defendant.
_____

## INTRODUCTION

Plaintiff Todd M. Papoi ("Plaintiff") brings this action pursuant to the Social Security Act § 216(I) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") payments.  Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Richard A. Kelly denying his application for benefits was not supported by substantial evidence contained in the record and was contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12 (c), on grounds that the ALJ's decision was supported by substantial evidence.  Plaintiff opposes the Commissioner's motion, and cross-moves for judgment on the

_____

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007.  Pursuant to Rule 25 (d) (1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessors Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

pleadings, on grounds that the Commissioner's decision was erroneous. For the reasons set forth below, the court finds that the decision of the Commissioner, is supported by substantial evidence in the record, and is in accordance with applicable law. Therefore, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's cross-motion for judgement on the pleadings is denied.

## **BACKGROUND**

On May 4, 2004, Plaintiff, at that time 41 years-old, filed applications for Supplemental Security Income Benefits under Title II, § 216(I) and § 223 of the Social Security Act claiming an inability to work since July 15, 2003, due to: cervical disk herniations, lumbosacral strain/sprain, severe muscle spasms, carpal tunnel syndrome of the right hand, asthma, and depression. Plaintiff's application was denied by the Social Security Administration ("the Administration") initially on September 21, 2004.[2] Plaintiff then filed a timely request for a hearing on October 25, 2004.

Thereafter, on November 21, 2005, Plaintiff appeared with counsel in Buffalo, New York, before the ALJ who presided from Philadelphia, Pennsylvania via teleconference. In a decision dated January 24, 2006, the ALJ determined that Plaintiff was not

---

[2]Claimant had previously filed an application for SSI on October 31, 2003, that was initially denied on December 30, 2003.

disabled.   The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on June 15, 2006.  On July 6, 2006, Plaintiff filed this action.

## DISCUSSION

### I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.  Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938).  Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence.  See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo).  The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation

omitted).  The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c).  Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc.,842 F.2d 639 (2d Cir. 1988).  If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II.   **The Commissioner's decision to deny the Plaintiff benefits is supported by substantial evidence in the record.**

### A.   **The ALJ properly found that Plaintiff is not disabled.**

The ALJ's decision that the Plaintiff is not disabled as defined by the Act is supported by substantial evidence in the record.  The ALJ properly weighed the various medical opinions contained in the record, in concluding that the Plaintiff is not disabled.  The ALJ relied on the opinions of the Drs. Waghmarae, Wheeler, Holland, and Ryan, and those opinions, along with the substantial objective evidence in the record, establish that the Plaintiff is not disabled.  Accordingly, I affirm the ALJ's conclusion that Plaintiff was not disabled within the meaning of the Social Security Act.

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.[3]  The ALJ adhered to the Social Security Administration's five-Step sequential evaluation analysis in determining disability benefits.  20 C.F.R. § 404.1520.  The five-Step analysis includes: (1) ALJ considers whether claimant is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether claimant has severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if claimant suffers such impairment, such inquiry is whether, based solely on medical evidence, claimant has impairment which is listed in regulations Appendix 1, and if so, claimant will be considered disabled without considering vocational factors; (4) if claimant does not have listed impairment, the fourth inquiry is whether, despite claimant's severe impairment, he has residual functional capacity to perform his past work; and (5) if claimant is unable to perform past work, the ALJ determines whether claimant could perform other work. Id.

Under Step 1 of the process, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date. (Transcript of Administrative Proceedings at page 16) (hereinafter "T."). At Steps 2 and 3, the ALJ concluded that Plaintiff's impairments of right carpal tunnel syndrome, left herniated nucleolus pulpous at C3-4, a broad based disc bulge at C4-

---

[3]Claimant did meet the non-disability requirements for a period of disability and disability insurance benefits, under section 216(I) of the Act, through December 31, 2007.

5, a small posterior disc bulge at C5-6, s small bulge at C6-7, back pain impairment, asthma, migraines, depression and anxiety, were impairments that were "severe" within the meaning of the Regulations but were not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4. (T. at 17-19).

At Steps 4 and 5, the ALJ concluded that Plaintiff retained the residual functional capacity to perform the exertional requirements of sedentary to light work. (T. at 20).  The ALJ found that Plaintiff's residual functional capacity to perform his previous work was diminished because of, "mechanical pain with force placed through his lower left lumbar and his right cervical spine". (T. at 23).  The ALJ further found that Plaintiff was limited in his ability to sit and/or stand for extended periods of time. Id.

The ALJ found that Plaintiff could not perform his past relevant work as a computer field tech service person and cable installer. (T. at 25).  However, the ALJ concluded that Plaintiff had the residual functional capacity to perform significant ranges of light and sedentary work, with certain limitations. (T. at 26).

 The ALJ found that Plaintiff could perform such jobs as an information clerk, billing clerk, and an order clerk, and that such jobs exist in the national and local economies. Id.

6

**B.   The ALJ's properly weighed the opinions of Plaintiff's treating and non-treating physicians.**

Plaintiff contends that, "The ALJ erred as a matter of law by improperly discounting the weight of the treating physician's conclusion." (Pl. Br. at 7).  The ALJ evaluated the objective medical evidence as well as Plaintiff's subjective complaints, in making his determination.   The ALJ primarily relied upon the opinions of Drs. Waghmarae and Wheeler, two of Plaintiff's treating physicians,   and   the   Administration's   examining   physicians, Drs. Holland and Ryan.   He afforded little weight to the opinions of Plaintiff's treating physician Dr. Huckell, Plaintiff's treating chiropractor Dr. Croce, and State agency psychiatric consultant, Dr. Szymanski.

The   Social   Security   regulations   require   that   a   treating physician's opinion will be controlling if it is, "well supported by   medically   acceptable   clinical   and   laboratory   diagnostic techniques   and   is   not   inconsistent   with   the   other   substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).  The ALJ gave little   weight   to   Dr. Huckell's   opinion   because   that   opinion   was inconsistent   with   Dr. Huckell's   own   clinical   findings,   and   was inconsistent   with   both   the   substantial   evidence   contained   in   the record, and the opinions of Drs. Wheeler and Waghmarae. (T. at 18, 22).   The ALJ also gave less weight to the opinion of Dr. Croce, Plaintiff's treating chiropractor, since the opinions of physicians are afforded greater weight than those of chiropractors. (T. at 24).

7

Plaintiff was treated by orthopedic surgeon, Dr. Wheeler, from January 21, 2004, through June 2, 2004 for bilateral hand complaints. (T. at 124-134). On February 4, 2004, Dr. Wheeler found that Plaintiff suffered from recurrent left volar wrist ganglion and carpal tunnel syndrome in the right hand. (T. at 129). A left volar wrist ganglion excision was performed on Plaintiff on February 20, 2004. (T. at 133-134). On June 2, 2004, Dr. Wheeler observed that the left volar wrist ganglion had returned, and recommended that the Plaintiff seek conservative treatment for the left wrist and electrodiagnostic studies for the right hand. (T. at 124). Between February 6, 2004, and July 16, 2004, Plaintiff was seen by pain specialist Dr. Waghmarae who administered epidural injections to help with pain. (T. at 216-222). The Plaintiff reported that the injections provided good pain relief. (T. at 216-218, 220).

Dr. Waghmarae had also previously treated the Plaintiff for complaints of back pain on October 10, 2003. (T. at 225-227). During that time, Dr. Waghmarae noted that even though Plaintiff smoked 3/4 of a pack of cigarettes per day, his asthma was controlled by medication. (T. at 226). Plaintiff was observed to have a normal gait, as well as no abnormalities in the neck and head region. Id. A musculoskeletal examination revealed a negative Spurling test, a negative Waddell sign, a negative iliac compression test, and a negative Gaenslen test. Id. Both Patrick's test and straight leg raising tests were negative. Id. It was noted that Plaintiff's range of motion in regards to both his lumbar and

cervical spine were limited. Id.  Dr. Waghmarae diagnosed Plaintiff
with cervical discogenic related pain with cervicalgia, as well as
lumbar myofascial type pain. Id.  He recommended that Plaintiff
continue to see his chiropractor because Plaintiff had indicated
that chiropractic treatment had been beneficial. (T. at 226-227).
Dr. Waghmarae also prescribed Lidoderm patches to help with the
pain. Id.  Plaintiff continued to see Dr. Waghmarae for pain
management and received injections and patches to manage his pain.
(T. at 216-224).  Both Plaintiff and Dr. Waghmarae noted that these
treatments improved the Plaintiff's condition. (T. at 216-218, 220,
223).

On November 20, 2003, orthopedic surgeon Dr. Huckell evaluated
the Plaintiff for complaints of lower back and neck pain.
(T. at 237-239).  Dr. Huckell observed that Plaintiff had a normal
gait, full muscle strength throughout the major muscle groups, and
normal reflexes. (T. at 238).  While sensations were normal in his
lower extremities, they were slightly decreased in his upper
extremities. Id.  The cervical spine had full range of motion while
the lumbar spine had limited range of motion. Id.  X-rays of the
lumbar and cervical spines revealed spondylosis in the thoracolumbar
spine spanning from T11 to L2 as well as spondylosis of moderate
severity from C3 to C6. Id.  MRI scans of the lumbar and cervical
spines revealed a disc herniation effacing the thecal sac, and a
bulging disc at C4-C5 level. (T. at 239).  Dr. Huckell recommended

that the Plaintiff continue to see his chiropractor and work on his exercises for his cervical and lumbrosacral spine. Id.

In a follow-up visit on March 8, 2004, Dr. Huckell observed that Plaintiff walked with a slow and steady gait (T. at 235-236). Plaintiff had limited range of motion in the lumbar and cervical area of his spine, yet he still had full muscle strength and normal reflexes throughout his upper and lower extremities. (T. at 235-236).   Dr. Huckell stated that while plaintiff was temporarily disabled, he could perform sedentary work. (T. at 236).   Yet on a disability report dated May 24, 2004, Dr. Huckell stated that Plaintiff was temporarily totally disabled. (T. at 233-234).   The ALJ decided to disregard Dr. Huckell's finding of total disability because it was inconsistent with his own clinical finding that in a report dated March 23, 2004 which stated that plaintiff would benefit from light to sedentary work.  (T. at 233-236).  A treating physician's opinion is entitled to controlling weight only if it is well-supported, and is not inconsistent with the weight of evidence in the record. 20 C.F.R. §§ 404.1527(d) and 416.927(d).

Plaintiff was also assessed by Dr. Szymanski, a State agency psychiatric consultant, on August 13, 2004.  (T. at 259-271). Dr. Szymanski reviewed the Plaintiff's medical record, and determined that Plaintiff's depressive disorder and anxiety disorder were not of listings-level severity.  (T. at 259, 262, 264). Dr. Szymanski noted that while Plaintiff did have mild difficulties in maintaining social functioning, and moderate difficulties in

10

maintaining concentration, persistence and pace, he had no limitations in daily living. (T. at 269). The ALJ however, gave diminished weight to the opinion of Dr. Szymanski's on grounds that his findings were inconsistent with the opinion of Dr. Ryan, a consultative examiner, who found that Plaintiff's thought processes were coherent and goal oriented, and that his recent and remote memory were intact as was his cognitive functioning. (T. at 18).

Dr. Croce, a chiropractor, treated Plaintiff from July 15, 2003, until July 16, 2004. (T. at 139-213). Initially, Dr. Croce treated Plaintiff for a disc herniation, which was revealed during an MRI scan taken on September 5, 2003. (T. at 214-215). The herniation was treated by Dr. Croce through chiropractic manipulation. (T. at 139-167). Beginning on July 25, 2003, through October 17, 2003, Dr. Croce diagnosed Plaintiff with cervical radiculitis, multiple cervical subluxation, lumbosacral stain/sprain, and muscle spams. (T. at 210-212). Due to these ailments, Dr. Croce stated that Plaintiff had been temporarily totally disabled from September 10, 2003, through April 15, 2004. (T. at 207-213). Dr. Croce concluded that Plaintiff's ailments were a result of an accident that occurred on July 25, 2003. (T. at 207-213). However, beginning in August 2003 through March 2004, Dr. Croce and his associates consistently noted that Plaintiff had a normal gait, full muscle strength in all major muscle groups, normal reflexes, and a limited range of motion in his cervical and lumbar spines. (T. at 181, 187, 190, 193, 196, 199, 202). Pursuant

11

to 20 C.F.R. 404.1513(a) and 416.913(a), which provides that a medical doctor's opinion is afforded greater weight than that of a chiropractor, the ALJ gave more weight to Dr. Waghmarae's medical opinion, than he did to Dr. Croce's chiropractic opinion. (T. at 24). The ALJ further found that Dr. Croce's opinion was inconsistent with the findings of Dr. Holland, a consultative orthopedist, who examined the Plaintiff on December 9, 2003. (T. at 113-116). While Dr. Croce stated that the Plaintiff was disabled, Dr. Holland found that the Plaintiff had only mild to moderate physical limitations. (T. at 116). These limitations included carpal tunnel syndrome of the left hand and a herniated disc. (T. at 116). According to Dr. Holland, Plaintiff still had full range of motion of his cervical spine, and upper and lower bilateral extremities. (T. at 114-116). Dr. Holland also found that Plaintiff retained full muscle strength, normal reflexes, normal sensations, and that his neck and lower back pain were stable. (T. at 115-116). Dr. Holland's findings were supported by a physical residual functional capacity assessment, which was performed on September 15, 2004, by the State agency. (T. at 24). Plaintiff could lift/carry/push/pull up to 20 pounds and frequently 10 pounds, was able to stand and/or walk up to 6 hours, and sit for 6 hours. (T. at 24).

The ALJ properly weighed the opinions of the physicians and gave controlling weight to those physician's opinions that were

well-supported by medical and laboratory findings, and were consistent with the substantial evidence in the record.

## **CONCLUSION**

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           June 27, 2008

13